UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80994-Civ-Brannon

NITV FEDERAL SERVICES, LLC,

    Plaintiff,

vs.

DEKTOR CORPORATION, and
ARTHUR HERRING III,

    Defendants.

_____/

**ORDER ON MOTIONS FOR FINAL
DEFAULT JUDGMENT AND PERMANENT
INJUNCTION AGAINST DEKTOR CORPORATION**

**THIS CAUSE** is before the Court on Plaintiff NITV Federal Services, LLC's ("NITV") Verified Motion for Default Final Judgment Against Defendant Dektor Corporation ("Dektor") [DE 88] and related Verified Motion for Entry of Permanent Injunction [DE 89]. Dektor has not timely responded to either motion. For the following reasons, the Motion for Final Default Judgment is granted in part as to liability only (the Court will require a supplemental evidentiary submission concerning damages), and the Motion for Permanent Injunction is granted.

**I.      INTRODUCTION**

This case involves two competing businesses that sell truth verification technology. NITV is a Florida limited liability company based in Palm Beach County whose members are all Florida citizens [DE 1 ¶ 1]. Dektor is a Pennsylvania corporation headquartered in Coopersburg, Pennsylvania [*Id.* ¶ 2]. Dektor's President and sole shareholder is Defendant Arthur Herring III, who is a citizen and resident of Pennsylvania [*Id.* ¶¶ 3, 22].

On July 27, 2018, NITV filed this action alleging four counts against Dektor and Mr. Herring: false advertisement, unfair competition, and product disparagement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), deceptive and unfair trade practices under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), defamation/business disparagement (Count III), and tortious interference (Count IV) [DE 1]. Generally, NITV alleges that Dektor unfairly competes with NITV by making false and defamatory statements about NITV, NITV's founder, and NITV's CVSA product to gain an unfair advantage in the market [DE 1 ¶¶ 29-86]. NITV alleges that the false and defamatory statements have been (1) published on Dektor's website, (2) communicated by Mr. Herring on behalf of Dektor in emails and on phone calls with several different law enforcement agency contacts across the U.S., (3) made by Mr. Herring on behalf of Dektor during a speech at a polygraph summit in Texas, and (4) made to organizers of a "Crimes Against Children" conference at which NITV was scheduled to speak [*Id.*]. NITV alleges that the false and disparaging statements have caused incredible damage to NITV's reputation, goodwill, and sales—causing damages "estimated to exceed $7 million." [*Id.* ¶¶ 35, 83, 85].

On March 12, 2019, a Clerk's default was entered against Dektor based upon its failure to appear, answer, or otherwise plead to NITV's Complaint, despite having been duly served [DE 85]. On April 1, 2019, pursuant to 11 U.S.C. § 362(a)(1), the Court stayed this case as to Mr. Herring only based upon Mr. Herring's filing of a bankruptcy petition on behalf of himself individually in a Pennsylvania bankruptcy court [DE 92]. The Court expressly noted that this case would proceed against Dektor [*Id.*].

NITV now seeks entry of final default judgment and a permanent injunction against Dektor. As compensatory damages, NITV requests base damages of $1,360,000.00. NITV also requests that this amount be trebled for a grand total of $4,080,000.00.

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. *See U.S. v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206. Importantly, damages may be awarded only if the record adequately reflects the basis for the award, which can be shown by submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a

hearing.  *See* Fed. R. Civ. P. 55(b)(2); *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

### III.  FACTUAL BACKGROUND[1]

NITV manufactures and is the sole source for a patented Computer Voice Stress Analyzer, II ("CVSA") product—which is described as digitized technology incorporated into a multi-functional, portable notebook computer that is "the most widely used truth verification tool in the United States law enforcement community" [DE 1 ¶¶ 8, 17].  The CVSA has been assisting law enforcement around the world in solving crimes and screening potential candidates for 25 years [*Id.* ¶ 8].  The CVSA is used by approximately 2,000 local, state, federal, and international law enforcement agencies, including approximately 175 agencies within Florida and approximately 13 federal government agencies [*Id.* ¶ 18].  NITV holds three patents in forensic voice stress analysis/voice related technologies and "is recognized throughout the world as a leader in the field of voice stress analysis" [*Id.* ¶¶ 9, 11].

According to NITV, in 1972, Allan D. Bell, Jr., Wilson H. Ford, and Charles R. McQuiston –the three principals of a company called Dektor Counterintelligence and Security, Inc.–patented a groundbreaking invention which would become known and sold as the "Psychological Stress Evaluator" ("PSE") [*Id.* ¶ 19].  However, Dektor Counterintelligence and Security, Inc.'s voice stress analyzer product disappeared from the market after the company went out of business in the late 1990's [*Id.* ¶ 21].  Dektor, the corporate Defendant in this case, was formed in 1999 and is not a successor-in-interest or connected in any way to the original Dektor Counterintelligence and Security, Inc. [*Id.* ¶¶ 22-23].  Instead, Dektor appropriated the "Dektor" name, reverse-engineered

---

[1] The factual background is taken from NITV's Complaint [DE 1], NITV's Verified Motion for Default Judgment Against Dektor [DE 88] and supporting evidentiary submissions.

Dektor Counterintelligence and Security, Inc.'s product, and now sells its own "PSE" voice stress analyzer product while capitalizing on the name and history of the original Dektor Counterintelligence and Security, Inc. [*Id.* ¶ 24]. For instance, as of the date of NITV's Complaint, Dektor's website (http://www.dektorpse.com/) represented that:

> PSE® stands for Psychological Stress Evaluator®. **Since 1969**, all PSE® models (PSE 7010, PSE 5128, PSE 4202, PSE 2000, PSE Dek, PSE 101, PSE 1) detect, measure, and graphically display the degree of presence or absence of inaudible body tremors known as micro-muscle tremors.
>
> Thousands of various PSE models have been sold worldwide **for 45 years**. **For 50 years**, PSE® has been known worldwide because PSE® constantly proves it is the most superior system for truth verification. Only the Dektor system has proven it is the real technology for Voice Stress Analysis™.

[*Id.* ¶ 25]. Dektor directly competes with NITV by marketing and selling Dektor's "PSE-7010" (described as a software-based voice stress analyzer) to the same law enforcement agencies, military agencies, private corporations, and other entities to which NITV markets and sells its CVSA product [*Id.* ¶¶ 26, 28, 96]. According to Dektor's website, "[t]housands of various PSE models have been sold worldwide for 45 years" and PSE's are used by law enforcement agencies, Fortune 500 companies, security companies, military, and others [*Id.* ¶ 27].

Dektor's campaign to disparage NITV includes 28 pages of defamatory material concerning NITV and NITV's founder located on Dektor's website, as well as e-mails to law enforcement agencies, telephone calls, and professional speaking engagements designed to widely spread numerous and material falsehoods about NITV and its CVSA product [*Id.* ¶¶ 29, 33]. NITV cites the following examples of Dektor's targeted campaign to disparage NITV:

- On March 18, 2014, while speaking at a Texas Polygraph Summit hosted by the Texas Department of Licensing and Regulation, Mr. Herring publicly berated NITV and NITV's CVSA product as being scams that have been proven unreliable (no more reliable than a coin toss or 50% accuracy) and touted Dektor's PSE product and its storied (albeit false) history dating back some 50 years [*Id.* ¶ 34].

5

- Mr. Herring has contacted (telephonically and/or via e-mail) dozens (if not hundreds) of law enforcement agencies across the country to discredit NITV and its CVSA product by (1) referring to CVSA as a "scam," stating that CVSA has been proven unreliable (no more than 50% accuracy), (2) stating that NITV only sells to law enforcement because NITV knows such agencies will not sue NITV for selling an unreliable product as doing so would reopen cases on which CVSA was used, (3) stating that NITV's founder obtained a "store bought" diploma, and (4) conveying other false and disparaging information (falsely represented as "facts") concerning NITV and its CVSA product [*Id.* ¶ 35].

- On July 22, 2018, Mr. Herring (using e-mail address admin@dektorpse.com) sent an unsolicited e-mail to a detective with the Garfield County Sheriff's Office (which uses NITV's CVSA product) in Glenwood Springs, CO with the subject line "lie detection scam." The email contains numerous paragraphs of falsehoods and disparaging material concerning NITV and its CVSA product (including that the CVSA product is a scam and not more than 50% reliable), while touting the reliability and "proven superiority" of Dektor's PSE product in an effort to solicit business from the Garfield County Sheriff's Office. This email is just one of dozens (if not hundreds) of similar e-mails sent to law enforcement agencies in the U.S. in 2018 alone [*Id.* ¶¶ 34-39].

- On July 25, 2018, Mr. Herring sent substantially the same e-mail (with "voice lie detector scam" as the subject line) to the Executive Director of the Missouri Police Chiefs Association (which represents over 600 members in Missouri). The Executive Director then forwarded Mr. Herring's e-mail to the organization's membership, meaning that with one e-mail Herring essentially spread his falsehoods and disparaging remarks throughout the entire State of Missouri [*Id.* ¶ 40].

- In May 2018, Dektor contacted the organizers of the Dallas Crimes Against Children's conference (NITV was a speaker at the 2017 conference and was scheduled to speak again at the 2018 conference). The 2018 conference was set for August 13–16, 2018. Dektor contacted the organizers with the specific intent to interfere with NITV's contract and participation at the conference and did so by making numerous false statements to the conference organizers about NITV, NITV's employees (such as falsely stating that an employee scheduled to speak at the conference had been dishonorably fired from his prior position as a sex crimes investigator when in reality that employee retired), and NITV's CVSA product (the same factual allegations as described above with respect to Mr. Herring's e-mails and other communications sent on Dektor's behalf). NITV gained substantial business and sales from its speaking engagement at the 2017 conference and had invested substantial sums to be a presenter—including a signed contract in place and paid in full—to speak at the 2018 conference. Because of Dektor's false and disparaging comments, NITV was uninvited/barred from presenting at the 2018 conference (notwithstanding NITV's paid contract with the organizers) and suffered a tremendous loss of goodwill/reputation and lost sales [*Id.* ¶ 41-44].

6

On October 24, 2018, during Mr. Herring's deposition in this lawsuit (on behalf of himself individually and as Dektor's corporate representative), Mr. Herring confirmed that he sent approximately 1,100 of the same type of e-mails concerning NITV and the CVSA product, and was continuing to "send[] out press releases about the lawsuit" [DE 88-1, Herring Dep. 63:3-63:18].

According to NITV's verified motion, Dektor's main business website contains an entire section (available at http://www.dektorpse.com/information/cvsa/) dedicated to disparaging NITV and NITV's CVSA product (with the section stating that it was last updated in June 2018) [DE 88 ¶ 39]. As with Mr. Herring's e-mails, telephone calls, and in-person communications, Dektor's website contains numerous false allegations of fact about NITV and the CVSA product [*Id.* ¶ 40]. NITV earnestly discusses these false statements in its verified motion, including but not limited to Dektor's false statements that (1) "the CVSA has never shown any studies that prove it is better than a coin toss in real crimes" (when, in fact, a 2012 peer review published study showed the CVSA's error rate to be less than 1%), (2) that the CVSA is "about $13,000 per device" (when, in fact, the CVSA has been priced less than $9,000 for a number of years), (3) NITV's founder has an unearned fake title bought from a diploma mill (when, in fact, NITV's founder, Charles Humble, received an Honorary Doctorate from Indiana Christian University in 1987 and Mr. Humble has only ever claimed to have this honorary degree), and (4) the CVSA and NITV training are "an expensive prop" according to "almost all" law enforcement agencies that bought the product and related services (when, in fact, nearly 2,000 law enforcement agencies worldwide use and continue to use the CVSA) [*Id.* ¶¶ 42-73].

According to NITV, Defendants have shown no sign of slowing down their campaign of disparaging NITV—as evidenced by Dektor's registration and publication of a new website,

www.NITVCVSAexposed.com, *after* this lawsuit was filed [*Id.* ¶ 81]. Unlike Dektor's website (which also contains information about Dektor's product and discusses other truth verification tools), the NITVCVSAexposed website is dedicated entirely to the disparagement of NITV and its CVSA product [*Id.*]. In Mr. Herring's own words, the NITVCVSAexposed website is "a huge, beautiful website of all the documents and information showing that [NITV] is a liar, a con man, and a scam artist" [DE 88-1, Herring Dep. 61:10-12].

## IV.   ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a final judgment of default against a party who has failed to timely plead in response to a complaint. Here, the clerk's default against Dektor constitutes an admission by Dektor of the well-pleaded allegations in the Complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)).

However, because a defaulting party is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must determine if there is a sufficient basis in the pleading for judgment to be entered before turning to the appropriateness of granting relief in the form of a permanent injunction and monetary damages.

### A.   *Sufficiency of NITV's Allegations*

#### 1.   **False Advertising, Unfair Competition, and Product Disparagement under the Lanham Act (Count I)**

The Lanham Act prohibits making "false or misleading representation[s] of fact … in commercial advertising or promotion" which "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §1125(a)(1). To prevail on a false advertising claim under the Lanham Act, the movant must show (1) that the defendants' advertisements were false or misleading; (2) that the

8

advertisements deceived, or had the capacity to deceive, consumers; (3) that the deception materially affected purchasing decisions; (4) that the misrepresentation affects interstate commerce; (5) and that the plaintiffs were injured or are likely to suffer injury because of the false advertising. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Under the Lanham Act, a "cause of action for product disparagement includes the following elements: 1) there must be 'commercial advertising or promotion' constituting commercial speech of or concerning another's goods or services or commercial activities, 2) by a defendant who is in commercial competition with plaintiff, 3) for the purpose of influencing consumers to buy defendant's goods or services, and 4) the promotion must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry."). *See Fun Spot of Fla., Inc. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1203 n.3 (M.D. Fla. 2002) (collecting cases).

Here, NITV's allegations sufficiently support the Lanham Act violations lodged against Dektor. NITV claims that Dektor is falsely representing its own PSE product (as being the same product sold by the original Dektor Counterintelligence and Security, Inc.) and also falsely stating that Dektor has been in business since 1969. Dektor's various e-mails, letters, and websites constitute commercial speech from a competitor made for the purpose of influencing consumers to purchase Dektor's PSE product. NITV offers specific details about Dektor being the source of e-mails, letters, and websites containing materially false information about NITV and NITV's CVSA product. NITV claims that the false advertising has caused NITV to suffer a tremendous loss of goodwill and lost sales. As such, NITV is entitled to judgment on its claims under the Lanham Act.

9

### 2. Florida's Deceptive and Unfair Trade Practices (Count II)

One stated purpose of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA). is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). A FDUTPA claim has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012); *BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *4 (S.D. Fla. Feb. 25, 2016) (citing Florida case law).

NITV's allegations sufficiently support its FDUTPA claim. As described in detail above, NITV alleges that Dektor has engaged in a widespread scheme of intentionally deceptive acts to promote Dektor's own PSE product to the direct detriment of NITV's product and legitimate business. Per NITV, Dektor has engaged in a nationwide campaign of disparaging NITV and NITV's competing CVSA product through websites, in emails, during phone calls, and at speaking engagements. NITV alleges that Dektor's deceptive and unfair trade practices have caused incredible damage to NITV's reputation, goodwill, and overall sales. These allegations suffice to sustain a claim under FDUTPA.

### 3. Defamation/Business Disparagement (Count III)

Under Florida law, a plaintiff alleging defamation must prove: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

10

Here, NITV alleges that Dektor published numerous false and defamatory statements about NITV and NITV's product and related services to dozens if not hundreds of law enforcement agencies and other consumers of NITV's products and services. NITV alleges that Dektor knew the defamatory statements were false when made and that NITV has suffered substantial damages, including but not limited to lost sales and lost goodwill as a direct result of the defamation. NITV's allegations are enough to support a claim for defamation/business disparagement.

### 4. Tortious Interference (Count IV)

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).

NITV has satisfactorily stated its claim for tortious interference. NITV claims it had existing contracts or prospective business relationships with various law enforcement agencies and other third party contacts for the sale of NITV's CVSA product and related services. NITV claims Dektor knew about these contracts and business relationships and intentionally interfered by making false and disparaging statements about NITV and the CVSA product to dissuade known CVSA users from using NITV's products and instead use Dektor's PSE competing product. NITV is thus entitled to judgment against Dektor on this fourth and final count.

### B. *Permanent Injunction*

Pursuant to the Lanham Act, a district court may issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a).

Injunctive relief is also available to remedy FDUTPA violations. *See* Fla. Stat. § 501.211(1); *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 2012 WL 3870405 *2-3 (Fla. 5th DCA Sept. 7, 2012). Injunctive relief is a "remedy of choice" in unfair competition cases and is available in the default judgment setting. *See Burger King Corp. v. Agad*, 911 F.Supp. 1499, 1509–10 (S.D. Fla. 1995); *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016). Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008).

Here, NITV has carried its burden on each of the four factors. The Complaint's well-pleaded factual allegations properly support the requisite elements for all four counts asserted under federal and Florida law. These well-pleaded factual allegations are admitted by virtue of Dektor's default and have been substantiated by deposition testimony and other evidence submitted by NITV. Dektor's failure to respond makes it difficult for NITV to prevent further unfair competition and deceptive trade practices absent an injunction. Moreover, absent a permanent injunction, NITV will suffer an irreparable injury as it appears as though Dektor is intent on continuing to publish defamatory and disparaging e-mails, letters, and websites dedicated to upending NITV's business.

The balance of harms likewise favors issuance of a permanent injunction. NITV has a statutorily protected right to be free from Dektor's deceptive and unfair trade practices and Lanham Act violations. The harm to NITV from Dektor's continued activities is widespread and cannot be fully compensated or measured in money. The public interest is served by encouraging fair

competition in the marketplace and the provision of accurate and truthful information in a party's advertisements and marketing materials. The public interest is therefore served by the issuance of permanent injunctive relief against Dektor.

### C. *Damages*

Notwithstanding the propriety of default judgment against Dektor, it remains incumbent on NITV to prove the amount of damages to which it is entitled. While well-pleaded facts in the Complaint are deemed admitted, a plaintiff's allegations regarding the amount of damages are not admitted by virtue of default; rather, the Court must determine both the amount and character of damages. Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir.2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir.1985) (damages may be awarded on default judgment only if the record adequately reflects the basis for award).

Here, NITV seeks *$1,360,000.00* as total base damages consisting of:

- NITV's investment of *$200,000.00* with "respect to just one licensing board in the State of Texas . . . in connection with having its CVSA product approved" plus "approximately *$1,000,000.00* in expected net profit over the first two years of the project."

- *$10,000.00* in lost business from the Groveport (OH) Police Department. According to NITV, the Groveport Police Department discontinued dealings with NITV and instead purchased Dektor's product based upon "'scam' letters" sent by Defendants.

- *$150,000.00* in estimated losses resulting from NITV being uninvited as a speaker for the Crimes Against Children 2018 conference in Dallas, Texas.

[DE 88 at 19-20]. NITV asks that these base damages be trebled to *$4,080,000.00*, arguing that Dektor's willful disparagement of NITV and Dektor's refusal to participate in this case supports an enhanced damage award.

The problem though is that the record is devoid of evidentiary materials showing how the above figures were calculated. Instead, NITV relies on conclusory statements in its verified motion. For instance, in support of its request for a million dollars in expected net profit, NITV claims that its "estimate of lost profit is based upon [NITV's] internal financial documents in addition to the knowledge/experience of Charles Humble ([NITV's] founder and President) in negotiating this and similar projects." [*Id.* at 19]. Presumably, it would be a relatively straightforward matter for NITV to produce an affidavit by Mr. Humble, together with a spreadsheet or other backup documentation to support this statement. The same is true for the damages attributable to lost business involving the Groveport Police Department and the Crimes Against Children 2018 conference.

As for NITV's request for treble damages under 15 U.S.C. § 1117(a), the Eleventh Circuit has held that "to be eligible for Lanham Act treble damages, the plaintiff must prove that the defendant's conduct was intentional." *Vector Prod., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1320 (11th Cir. 2005) (citing *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir. 1991)). The Court may, in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages, whichever is greater, as justice shall require. *See* 15 U.S.C. § 1117(a). Such an award is discretionary, but it may not be punitive, and must be based on a showing of actual harm. *Island Fund Mgmt., Inc. v. RWS, Inc.*, 2019 WL 1466707, at *4 (S.D. Fla. Feb. 11, 2019), report & recommendation adopted, *Island Fund Mgmt., Inc. v. RWS, Inc.*, 2019 WL 1468540 (S.D. Fla. Mar. 12, 2019). NITV has alleged that Dektor intentionally engaged in false advertising, unfair competition, disparagement, and tortious interference. Accepting NITV's well-pleaded allegations as true by virtue of the default judgment and based on Dektor's affirmative absence from this case, it appears that enhanced damages may be warranted

in this case. However, the Court will reserve ruling on the appropriate enhancement, if any, pending the Court's ability to first determine compensatory damages.

Given the current state of the record, the Court has no reasonable evidentiary basis for computing a damages award. For the Court to simply adopt NITV's estimated damages would be an act of pure speculation. Such a judicial leap of faith in ascertaining the appropriate amount of damages in a default judgment setting runs contrary to the clear requirement that a plaintiff seeking a default judgment must prove its damages by record evidence. Rather than merely telling the Court in summary fashion what its damages are, NITV must show the Court what those damages are and precisely how they are calculated, with reference to appropriate supporting documentation and witness testimony as appropriate. This is especially true here where NITV seeks a multi-million-dollar award of damages. For these reasons, the Court will require NITV to file a supplemental evidentiary submission on damages.

## V.  CONCLUSION

In accordance with Federal Rule of Civil Procedure 55, the Court has considered the well-pled allegations and the record evidence in this case and finds that NITV's averments support the entry of a final default judgment against Dektor. NITV has also met its burden of showing that it is entitled to permanent injunctive relief under both federal and Florida law. The Court will require a supplemental evidentiary submission to determine the appropriate amount of damages. Consistent with the foregoing, the Court **ORDERS** as follows:

1. NITV's Verified Motion for Default Final Judgment Against Defendant Dektor Corporation ("Dektor") [DE 88] is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to liability only. The Court reserves ruling on the amount of damages to be awarded. **On or before June 4, 2019**, NITV shall file a supplemental evidentiary submission consisting of

detailed documentation (in the form of affidavits and/or declarations, plus supporting exhibits) in support of its claimed money damages against Dektor, together with a proposed final judgment in this case that is consistent with this Order and includes an award of damages.

2. The five-day jury trial set for October 28, 2019, shall be **CANCELED**. All existing pretrial deadlines shall be **TERMINATED**.

3. NITV's Verified Motion for Entry of Permanent Injunction [DE 89] is **GRANTED** as follows. Dektor, its shareholders, directors, officers, agents, servants, employees, successors, assigns, affiliates, joint venturers, and any and all other persons in active concert, in privity with them are **PERMANENTLY ENJOINED** from:

(a) Sending or transmitting any e-mails, text messages, letters, or other written correspondence to any entity (including any law enforcement agency or government agency) or person which contains any false or disparaging remarks or statements about NITV, its CVSA product, or NITV's founder/President, Charles Humble. For the avoidance of doubt, this restriction specifically includes, but is not limited to: (1) any statement concerning the purported accuracy/reliability of CVSA; (2) any statement suggesting that NITV and/or its products are a scam or ineffective; (3) any statement concerning the PSE's supposed proven superiority over the CVSA; (4) any statement comparing or equating NITV, its product, or its employees to the German Nazi party or Joseph Goebbels specifically; (5) any statement that NITV's products (including the CVSA) are no more accurate than a coin toss; (6) any statement misrepresenting the pricing of Plaintiff's products; (7) any statement that Mr. Humble received an unearned, fake, or 'store bought' diploma; (8) any statement suggesting that the CVSA is just an expensive prop; (9) any statement that law enforcement agencies continue to use NITV's products in some conspiratorial effort to avoid overturned verdicts or lawsuits from defendants falsely convicted; (10) any

statement that any law enforcement officer has been wrongly fired because he flunked/failed a CVSA test yet was being truthful; (11) any statement that the processes/procedures used by Plaintiff (such as numeric scoring, DSR [Delayed Stress Response], cold calling, kinesics, F.A.C.T. and DBR [Defense Barrier Removal]) have no real substance or credibility; (12) any statement that any of the enjoined parties has "heard from" current or former CVSA examiners that there are serious flaws with the CVSA; (13) any statement that some purported 2007 study found serious design flaws with the CVSA that will produce flawed patterns/incorrect results; (14) any statement suggesting that CVSA tests were affected/ruined by persons holding the microphone during the test; (15) any statement that NITV's recertification courses are 'bullshit' type classes and the same information taught in NITV's original training courses; (16) any statement suggesting that NITV 'stole' or misappropriated Dektor's technology; and/or (17) any suggestion that NITV was somehow banned from advertising in insurance magazines or stopped advertising as a result of a drop in sales to law enforcement.

    (b)    Making any oral statement (whether in-person, telephonically, or otherwise) to any entity (including any law enforcement agency or government agency) or person which contains any false or disparaging remarks or statements about NITV, its CVSA product, or NITV's founder/President, Charles Humble—including, but not limited to, the examples provided in subparagraph (a) above.

    (c)    Publishing or posting any website, blog, or other writing accessible via the internet which contains any false or disparaging remarks or statements about NITV, its CVSA product, or NITV's founder/President, Charles Humble – including, but not limited to, the examples provided in subparagraph (a) above. For the avoidance of doubt, this includes all information published on the [www.NITVCVSAexposed.com](www.NITVCVSAexposed.com) website, all information published on the

http://www.dektorpse.com/information/cvsa/ sub-page, and all mentions of NITV/CVSA/Humble on http://www.dektorpse.com/information/imitations/.  The enjoined parties are ordered to *immediately* remove the aforementioned information from the subject websites and to *immediately* remove from public view/unpublish the www.NITVCVSAexposed.com website in its entirety.  If the enjoined parties fail to comply with this directive, they will not only be exposed to potential contempt proceedings, but NITV is also authorized to demand any webhost, web provider, registrar, or ICANN freeze and remove the aforementioned domain names from public view.

(d) Representing or suggesting, explicitly or implicitly, that Dektor and Dektor Counterintelligence and Security, Inc. have any relationship or affiliation, that Dektor has been in business since 1969, that Dektor and Dektor Counterintelligence and Security, Inc. have cooperated in any way, or that Dektor's PSE product is in any way related to the PSE product sold by Dektor Counterintelligence and Security, Inc.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of May, 2019.

_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE