IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80994-DLB

NITV FEDERAL SERVICES, LLC,

    Plaintiff,

v.

DEKTOR CORPORATION and ARTHUR
HERRING, III,

    Defendants.

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST HERRING
FOR SPOLIATION OF EVIDENCE AND DISCOVERY ABUSE**

Plaintiff NITV Federal Services, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 37(b)(2)(A), hereby moves for entry of an Order sanctioning defendant Arthur Herring, III ("Herring") as a result of the discovery misconduct described herein, and states as follows:

**INTRODUCTION**

This Motion seeks to impose the harshest of discovery sanctions – the striking of pleadings and imposition of a default against Herring – as a result of Herring's total disregard for and deliberate attempts to avoid his obligations under the Federal Rules of Civil Procedure and multiple Orders from this Court. It is the rare occasion that such sanctions are appropriate, but Herring went above and beyond in earning the honor. As set forth below, Herring's conduct includes the creation of a secret e-mail account for the specific purpose of avoiding production in this lawsuit, the commission of ***perjury*** in a deposition to avoid identifying this secret e-mail account, the installation of permanent file deletion software the day after he was scheduled to be

deposed on issues such as file retention, the attempted deletion of thousands of relevant documents during the pendency of this lawsuit, and the willful destruction and 'wiping clean' of a hard drive containing years of highly relevant documents.

Herring's conduct is a textbook example of the type of "willfulness" and "bad faith" necessary to impose the harsh sanction of default. Indeed, it is difficult to imagine a collection of worse conduct than Herring has engaged in here. Herring has done everything he can to avoid fairly participating in this litigation and to stymie Plaintiff's efforts to pursue its claims. The Court should recognize Herring's behavior for what it is and sanction him accordingly.

## BACKGROUND

1. On July 27, 2018, Plaintiff filed its Complaint in this action against Herring and co-defendant Dektor Corporation ("Dektor") (collectively, the "Defendants"). The Complaint contains four causes of action against Defendants: (1) False Advertising, Unfair Competition, and Product Disparagement Under the Lanham Act; (2) Deceptive and Unfair Trade Practices; (3) Defamation/Business Disparagement; and (4) Tortious Interference. All claims are asserted against both Defendants.

2. As the Court is well aware, Defendants' discovery misconduct throughout this lawsuit has resulted in substantial delays and caused Plaintiff to incur substantial expense in pursuing and obtaining relief from the Court requiring the Defendants to comply with their obligations under the Federal Rules of Civil Procedure. A brief background of these discovery issues is discussed below.

3. On October 22, 2018, Plaintiff filed a Motion to Compel Defendants' Depositions and for Sanctions [D.E. 32]. At the time, Plaintiff was attempting to engage in jurisdictional discovery relevant to Defendants' then-pending motion to dismiss for lack of personal jurisdiction.

Defendants' written discovery responses had raised the specter of a 'computer virus' that conveniently erased years of e-mail and other data from their primary laptop hard drive, and Plaintiff had arranged to take a deposition of Defendants on October 17, 2018 to inquire into those subjects. Defendants did not appear for that deposition (or a subsequently scheduled deposition), and Plaintiff was forced to file the aforementioned motion to compel.

4. While Herring claimed that he was "sick" and therefore could not attend the October 17, 2018 deposition, the truth is far more sinister. As discussed in detail below, Plaintiff recently learned from the forensic review of Defendants' ***current*** (non-damaged) hard drive that Herring installed a program called "File Shredder" thereon on October 18, 2018 – the day the aforementioned deposition was scheduled to occur. Hours later on the same date, Herring sent an e-mail to Matt Vanderhoff (an IT professional who has done extensive computer/internet work for Herring over the preceding years) thanking Mr. Vanderhoff "for the computer work." While it is unclear precisely what Herring permanently deleted or what "computer work" was done by Mr. Vanderhoff, Herring's behavior throughout this litigation strongly suggests that the pair were not doing routine maintenance on Herring's computer.

5. On October 24, 2018 (six days after installing "File Shredder"), Herring ultimately did appear for his telephonic deposition and, as a result, the Court entered a Paperless Order denying Plaintiff's motion to compel the deposition and for sanctions. See D.E. 38.

6. During the October 24, 2018 deposition, Herring conceded that, ***after*** the supposed hard drive crash, he sent multiple e-mails that were responsive to Plaintiff's document requests yet never produced in this lawsuit. Further, Herring boasted that he had (within a week or two of the deposition) sent between 150 and 1,100 e-mails to news agencies/reporters across the country containing a 'press release' which disparages Plaintiff.

3

7. As a result of this and other conduct during the deposition, on October 30, 2018, Plaintiff was forced to file a Motion to Compel Deposition Testimony, Production of Documents, and Forensic Examination [D.E. 39].

8. On January 7, 2019 (following withdrawal of Defendants' original counsel and appearance of new counsel), the Court entered an *agreed* Order on Plaintiff's Motion to Compel [D.E. 55] which required Defendants to produce responsive documents to Plaintiff's two document requests within twenty days from the Order and also authorized (subject to agreement on protocols) a forensic examination of Defendants' purportedly damaged former and currently working hard drives/e-mail accounts.

9. On February 8, 2019, the Court entered its Order on Forensic Analysis Protocols [D.E. 65] which set forth the parties' agreed protocols for collection and review of Defendants' hard drives/documents.

10. Although Defendants agreed to the forensic review protocols, they attempted to delay the process by later objecting to the 'damaged' hard drive leaving Mr. Vanderhoff's business premises in Pennsylvania (notwithstanding that Mr. Vanderhoff does not have a 'clean room' necessary for a forensic analysis to occur). On February 21, 2019, the Court was forced to enter yet another Paperless Order [D.E. 76] on the subject, this time directing that Plaintiff was entitled to have the analysis occur at its expert's designated 'clean room' facility in Orlando, FL with the analysis to be completed by or before March 14, 2019.

11. On February 28, 2019 – following Defendants' refusal to turn over the supposedly damaged hard drive in further violation of the above Orders – Plaintiff filed a Motion to Compel Defendants to Produce Damaged Hard Drive Pursuant to the Court's Order [D.E. 78]. That motion

sought relief as Defendants asserted they would not provide the subject hard drive until they retained new counsel.

12. On March 15, 2019 (with no response being filed by Defendants), the Court entered a Paperless Order [D.E. 86] granting the aforementioned motion to compel and requiring Defendants to "forthwith" turn over the hard drive.

13. Following provision of that Order to Mr. Vanderhoff directly, he sent the supposedly damaged hard drive to the 'clean room' facility in Florida and also cooperated with Plaintiff's expert in transferring Defendants' current hard drive documents/e-mails to the expert for review/analysis.

14. Subsequently, on March 26, 2019, Herring filed a Suggestion of Bankruptcy [D.E. 90] which notes that he had filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") on March 7, 2019 – two days after Plaintiff had filed a motion for entry of default against Dektor (for failure to retain counsel) and while the motion to compel production of the 'damaged' hard drive was pending.

15. On May 30, 2019, Dektor filed a Suggestion of Bankruptcy [D.E. 97] which notes that it had filed a voluntary Chapter 7 petition in the Bankruptcy Court on May 16, 2019.

16. On June 4, 2019, the Bankruptcy Court entered an Order dismissing Herring's Chapter 13 bankruptcy case for cause.

17. Although Dektor initially filed a motion to extend the time to file its bankruptcy schedules, it subsequently withdrew that motion on May 31, 2019 and indicated (through its bankruptcy counsel) that the case would not be pursued and therefore should be dismissed in relatively short order for failure to file the requisite schedules.

# ARGUMENT

## I. Legal Standard

Rule 37 permits a district court to impose sanctions on a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Such sanctions include "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." Id. Entering a default judgment as a discovery sanction "is appropriate only as a last resort" and requires a finding of willfulness or bad faith on the part of the offending party. Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993).

## II. Herring's Multitude of Discovery Misconduct

As set forth below, Herring has blatantly ignored his discovery obligations, committed gross acts of spoliation/file destruction, and has otherwise done everything in his power (including the filing and pursuit of two failed bankruptcy proceedings) to delay/avoid discovery of that misconduct. Any one of these actions could justify the striking of Herring's pleadings – collectively, these actions demonstrate an absolute disdain for the legal process and a willingness to do anything to escape liability in this lawsuit.

### A. Herring's Installation of "File Shredder" Program While Too Sick to Attend His Deposition

As discussed above, Herring was scheduled to appear for deposition on October 17, 2018 to answer questions on various subjects, including but not limited to:

> The facts and circumstances surrounding the "hard drive crash[]
> from a computer virus" as alleged by your responses to Plaintiff's
> jurisdictional discovery requests.
>
> The software and hardware systems (including but not limited to the
> name and location of such systems) used by you to store e-mail and
> other electronic documents.
>
> Your efforts to recover e-mail and other electronic documents

responsive to Plaintiff's jurisdictional discovery requests.[1]

On the day of the deposition, undersigned counsel was contacted by Defendants' then-counsel (Robert Eckard, Esq.) who conveyed that Herring was apparently too sick to attend the scheduled deposition and thus it would need to be rescheduled.

It was later revealed through the forensic investigation of Defendants' hard drives/e-mails that Herring was not necessarily 'sick' but rather proffering an excuse to delay the deposition while he scrubbed relevant information/documents from his computer. Indeed, on October 18, 2018 (the day after the deposition was to occur) at 3:47 p.m., Herring downloaded a program named "File Shredder" from http://www.fileshredder.org/files/file_shredder_setup.exe.[2] As described on the File Shredder website,[3] File Shredder is a desktop application "for shredding (destroying) unwanted files beyond recovery":



Three hours later on the same day (at 6:43 p.m.), Herring sent an e-mail to Mr. Vanderhoff

---

[1] See Notice of Taking Deposition of the Corporate Representative of Dektor Corporation, dated October 15, 2018, a true and correct copy of which is attached hereto as Exhibit "A."

[2] See Declaration of Andy Reisman, dated June 5, 2019 (the "Reisman Decl."), a true and correct copy of which is attached hereto as Exhibit "B," at ¶ 4.

[3] See http://www.fileshredder.org/.

thanking him for computer work:[4]

> On 10/18/2018 6:43 PM, Arthur Herring III wrote:
>
> Hi Matt,
>   Thanks for the computer work. Happy birthday, you are getting old.
> arthur

Although the forensic review shows the download and installation of File Shredder, it is not possible to determine what files Herring actually deleted from his computer.[5] However, given the proximity of the installation to the cancelled deposition and the other conduct described herein, it is difficult to imagine a purpose other than the willful destruction of documents relevant to the allegations in this lawsuit. Indeed, the Court need look no further than the sworn declaration of Mr. Vanderhoff himself to confirm Herring's intentions.[6] That declaration confirms (among other shocking details):

> ***During the course of this lawsuit, Mr. Herring has asked me on multiple occasions about file deletion software that could be used to permanently delete files that Mr. Herring did not want NITV obtaining access to.***[7]

This, unfortunately, was just the beginning of Herring's misconduct.

### B. Herring's Attempted Deletion of E-Mails

The forensic investigation of Herring's current/functioning hard drive also revealed that Herring **attempted to delete approximately 2,500 e-mails** that were sent between June 15, 2018

---

[4] See Exhibit "C," a true and correct copy of an October 18, 2018 e-mail from Herring to Mr. Vanderhoff.

[5] See Reisman Decl., at ¶ 5.

[6] See Exhibit "D," a true and correct copy of the June 5, 2019 Declaration of Matt Vanderhoff (the "Vanderhoff Decl.").

[7] Id. at ¶ 8.

and February 13, 2019 (the last date on which e-mails were collected as part of the forensic investigation).[8] These e-mails were located in Herring's Microsoft Outlook "Trash" folder, meaning they had been moved to the folder for deletion but not yet permanently deleted from the system (apparently Herring forgot to run these e-mails through File Shredder).[9] The substantial bulk of these e-mails were sent during the pendency of this lawsuit when Herring undoubtedly had a duty to preserve relevant documents (and had already been ordered by the Court to produce such documents to Plaintiff).

Many/most of these e-mails are highly relevant to Plaintiff's claims in this lawsuit – they are direct evidence of Herring's continued efforts to defame Plaintiff and its products to law enforcement agencies and media agencies, of Herring's conspiratorial relationship with Mr. Vanderhoff, and of Herring's attempted extortion/attempts to have criminal prosecutions brought against both NITV and undersigned counsel.[10] Had the Court not authorized a forensic review and Herring not been grossly incompetent in actually deleting these e-mails, Plaintiff would have never received these highly relevant communications.

      **C.**     **Herring's Use of 'Secure' E-Mail to Avoid Document Production**

The forensic review of Herring's current hard drive revealed that, in addition to deleting a tremendous amount of relevant data, Herring also created and utilized a secured/encrypted e-mail account (through https://protonmail.com) for the specific purpose of avoiding discovery in this lawsuit. Herring was instructed by a "Jill Olson" via e-mail on July 30, 2018 (three days after this

---

[8]    See Exhibit "E," a true and correct copy of a spreadsheet identifying all e-mails appearing in Herring's "Trash" folder within Microsoft Outlook; see also Reisman Decl., at ¶ 8.

[9]    See Reisman Decl., at ¶ 8.

[10]   True and correct copies of certain of the aforementioned e-mails found in Herring's "Trash" folder are attached hereto as Exhibit "F."

lawsuit was filed) to sign up for a secure/encrypted e-mail service "to communicate with key people."[11] That e-mail goes on to state: "You will want to DELETE ALL OF THE EMAILS BETWEEN US once you read them as NITV lawyers will be going after your email accounts."[12]

Herring apparently took Ms. Olson's instruction to heart because, on August 18, 2018, he sent an e-mail to Mr. Vanderhoff informing him that Herring had "signed up to proton mail."[13] Thereafter, Herring forwarded himself (to his admin@dektorpse.com address) several Plaintiff-related e-mails from melody2013@protonmail.com.[14] As acknowledged by Mr. Vanderhoff himself, it is beyond dispute that this secret e-mail account belongs to Herring – indeed, Herring was still sending e-mails to Mr. Vanderhoff from this account as recently as June 3, 2019.[15]

Again, Plaintiff only learned of this secret e-mail account through the sheer incompetence of Herring in hiding his misconduct. If Herring had not forwarded certain of the melody2013@protonmail.com e-mails to his Dektor e-mail address, Plaintiff would have never learned of that account's existence (as it was created specifically to avoid discovery in this lawsuit). Indeed, Herring went so far as to **lie under oath** during his October 24, 2018 deposition in this case when asked to identify all e-mail addresses used by him. During that deposition, Herring desperately attempted to avoid identifying any e-mail addresses used by him other than his admin@dektorpse.com address.[16] Herring himself objected on relevance grounds and refused to answer questions notwithstanding instructions from his own counsel (Robert Eckard, Esq.) to

---

[11] A true and correct copy of Jill Olson's July 30, 2018 e-mail is attached hereto as Exhibit "G."

[12] Id. (emphasis in original).

[13] A true and correct copy of Herring's August 18, 2018 e-mail is attached hereto as Exhibit "H."

[14] See Vanderhoff Decl., at ¶ 7.

[15] Id.

[16] See Deposition Transcript of Arthur Herring, III, dated October 24, 2018 (the "Herring Tr."), a true and correct copy of which is attached hereto as Exhibit"I," at 23:16 – 32:5.

identify the other e-mail addresses.[17] Finally, after undersigned counsel volunteered to treat Herring's answers as confidential for 14-days to allow Herring to file a motion for protective order, Herring relented and identified another e-mail address: Ed@Detectornews.com:

> Q. I'll ask it one more time. Mr. Herring, other than the Admin@DektorPSE.com email address, what other emails do you use?
> A. I use Ed@Detectornews.com.
> Q. Is that E-D?
> A. Yup.
> Q. At detector, D-E -- spell that.
> A. D-E-T-E-C-T-O-R-N-E-W-S.
> ***Q. Are there any other email addresses that you use?***
> ***A. Nope***.[18]

As highlighted above, Herring ***committed perjury***[19] when denying that there were no other e-mail addresses used by him. As disclosed by Mr. Vanderhoff, Herring forwarded himself multiple Plaintiff-related e-mails from the melody2013@protonmail.com address days prior to the October 24, 2018 deposition. Herring did not 'forget' about the e-mail address – he deliberately lied in response to a direct question in an effort to hide the existence of his secret e-mail address. Despite his obligations under the Federal Rules of Civil Procedure and at least one Order from this Court compelling him to produce responsive documents, Herring deliberately created a secret account so he could participate in an unknown number of communications about Plaintiff and this lawsuit. Herring even went so far as to lie under oath in a deposition to avoid discovery of the e-mail account. To this day, the only melody2013@protonmail.com e-mails that Plaintiff is aware of are the handful that Herring forwarded to his Dektor e-mail address. It is clear from these e-mails that Herring sent/received many additional e-mails concerning Plaintiff that were never disclosed in

---

[17] Id.
[18] See Herring Tr. at 32:7 – 32:17 (emphasis added).
[19] See 18 U.S.C. § 1621.

the context of this lawsuit (and were specifically purposed to never be disclosed).

### D. The 'Damaged' Hard Drive

Finally, most of Herring's above-described discovery misconduct pales in comparison to his pièce de résistance – the supposedly 'damaged' laptop hard drive that Herring fought tooth and nail to prevent Plaintiff from obtaining (notwithstanding Herring's prior agreement to an Order authorizing that forensic review). As explained above, Herring's written discovery responses in this lawsuit claimed that a "computer virus" infected his laptop hard drive, rendered it unusable, and therefore Herring was unable to produce *any* documents (other than a few magazine articles hand-selected by Herring) responsive to Plaintiff's document requests or respond substantively to Plaintiff's interrogatories. Herring described the supposed computer virus during his October 24, 2018 deposition, noting that it occurred in May 2018 (a few months prior to the filing of this lawsuit):

> Tell me about this hard drive crash that's referenced in your responses to interrogatories and document requests. There's reference to a hard drive crash from a computer virus that, apparently, interfered with your ability to gather or secure documents in response to our discovery request. So give me some information about that hard drive crash.
> A. Well, as everybody knows, viruses are very rampant, and I do get virus warnings from my antivirus software from time to time. And one day, I did get a virus warning, and in the next day or two the computer was unable to be used. And I just assumed it was the virus. Upon later discussion with my IT person, he told me the hard drive simply stopped working, it crashed.
> Q. You said one day this happened. When did it happen?
> A. I think it happened around the middle of May or so.
> Q. Around the middle of May, you think?
> A. It was about that.[20]

---

[20] See Herring Tr. at 8:5 – 9:3.

In January 2019, the Court entered an *agreed* Order authorizing a forensic investigation of the 'damaged' hard drive and of Herring's current/functioning hard drive and e-mail accounts (as Herring admitted during the October 2018 deposition that he was in possession of and had failed to produce thousands of relevant e-mails). Notwithstanding his agreement to a forensic investigation, Herring thereafter put up a tremendous number of roadblocks designed to prevent Plaintiff from obtaining the 'damaged' hard drive. As the Court knows, Herring insisted the drive remain at Mr. Vanderhoff's office at all times. When that did not work, he insisted that the forensic review occur in Pennsylvania. When that did not work, he insisted the drive not be turned over to the forensic expert until Herring retained new counsel. When that did not work, Herring filed a bad faith Chapter 13 bankruptcy petition in Pennsylvania (which was recently dismissed for cause) to slow discovery of his conduct. When that did not work, Herring filed a Chapter 7 bankruptcy petition for Dektor (which Dektor's bankruptcy counsel now confirms will be dismissed as they do not intend to file the requisite schedules).

Logically, Herring's resistance to the forensic investigation of the 'damaged' hard drive makes little to no sense. Herring testified in his deposition that all of his work-related e-mails and records (including correspondence with customers, correspondence with prospective customers, forms, sales records, etc.) were lost as a result of the hard drive crash and that he was unable to conduct any Dektor business until months later when a new hard drive was installed. One would assume that a business in operation for nearly 20 years would be eager to recover its sales/customer data – especially when someone else (Plaintiff) agreed to incur the cost for such recovery. On its face, Herring's conduct in resisting the forensic investigation was thus nonsensical. However, once the investigation actually occurred, Herring's motivations became much clearer.

Interestingly, although Herring claims a May 2018 catastrophic crash of his laptop hard drive that purportedly brought Dektor's business to a screeching halt, e-mails voluntarily produced by Mr. Vanderhoff and the thousands of e-mails reviewed from Herring's current hard drive are silent as to any such catastrophe. There is no mention of a failed hard drive or efforts to fix such drive. Rather, the only e-mail on point is an October 9, 2018 exchange between Herring and Mr. Vanderhoff (concerning a request for a phone call by Herring's attorney)[21] in which they debate when Mr. Vanderhoff should state that the hard drive crash occurred:

> From: Arthur Herring III
> To: "Matt Vanderhoff"
> Subject: RE: hard drive
> Date: Tuesday, October 9, 2018 3:40:50 PM
>
> Hi Matt,
>     About middle of june 2018 is better as to when the hard drive became contaminated and useless to use. That would be about 45 days before they filed the suit.
> Thanks
> arthur
>
> From: Matt Vanderhoff [mailto:mvanderhoff@vanderson.net]
> Sent: Tuesday, October 09, 2018 1:59 PM
> To: Arthur Herring III
> Subject: Re: hard drive
>
> Okay i will call her when back at my office. Is the May 2018 date okay to use?

The lack of communication (other than coordinating on a pre-deposition joint story) on the hard drive 'crash' is easily explained. As set forth in the June 3, 2019 declaration of the data recovery engineer who performed the analysis,[22] the subject hard drive appears to have been opened and extensively damaged through human interference.[23] This was confirmed by Mr. Vanderhoff who

---

[21] A true and correct copy of the October 9, 2018 e-mail is attached hereto as Exhibit "J."

[22] See Exhibit "K," a true and correct copy of the June 3, 2019 Declaration of Igor Sestanj (the "Sestanj Decl.").

[23] Id. at ¶¶ 9 – 10.

14

explained that, although he replaced Herring's 'old' hard drive in May 2018, he gave that 'old' hard drive (in undamaged condition) back to Herring at that time.[24] ***After*** Herring was served with this lawsuit (in August 2018), he brought the 'old' hard drive back to Mr. Vanderhoff and asked him to store the hard drive in his safe.[25] Notably, Mr. Vanderhoff noticed that the drive's encasement had been opened and that the drive may have been physically damaged (which it was not when the drive was returned to Herring in May 2018).[26] More importantly – and for increasingly obvious reasons – Herring asked Vanderhoff at that time (when delivering the 'old' hard drive in August 2018) to lie and tell anyone who asked that the hard drive was in Mr. Vanderhoff's possession from May 2018 through that date.[27]

Further, prior to the above-described physical damage, some person appears to have formatted the hard drive by utilizing software to erase all data thereon.[28] Both the Sestanj Decl. and the Reisman Decl. confirm that this damage and this formatting of the hard drive is not consistent with mechanical failure or a computer virus but rather deliberate tampering with the hard drive.[29] Unfortunately, as a direct result of this tampering, no data could be recovered from the hard drive and therefore Plaintiff's review was limited to those e-mails/documents created in or after June 2018.[30]

Notably, it is unclear whether ***any*** data was ***ever*** written to the hard drive provided by Herring for the forensic review. As conveyed by Mr. Vanderhoff, Herring recently reached out to

---

[24] See Vanderhoff Decl., at ¶ 5.
[25] Id.
[26] Id.
[27] Id.
[28] See Sestanj Decl., at ¶¶ 11 – 14.
[29] Id.; see also Reisman Decl., at ¶ 7.
[30] See Sestanj Decl., at ¶ 14.

him with a question concerning the prospective purchase of a new hard drive that Herring could 'swap out' with his existing hard drive if any further forensic review of his computers was ordered:

> More recently, Mr. Herring reached out to me with a question concerning whether he could purchase a new hard drive at Walmart that could be 'swapped' for his existing hard drive in the event that a further forensic examination of the hard drive was ordered. My understanding of this request is that Mr. Herring wanted to provide a 'dummy' drive devoid of data to the forensic expert so he could avoid disclosure of his actual files/documents.[31]

Herring's inquiry calls into question whether he did the same 'swap' with respect to the original hard drive submitted for forensic review (during the approximately 4 months Herring was in possession of the drive while asking Mr. Vanderhoff to lie to the contrary). That behavior would certainly be consistent with Herring's other conduct throughout this case – all of which unfortunately confirms Herring's belief that he is somehow 'above the law' or beyond the reach of this Court's power. This point is perhaps most clearly demonstrated by Herring's conduct/inquiries after the Court expended substantial effort in crafting a Permanent Injunction [D.E. 95] against Dektor which required the immediate takedown of the offending www.NITVCVSAexposed.com website (among other defamatory/disparaging material). Almost immediately after Mr. Vanderhoff (who hosted the website) voluntarily complied with the Permanent Injunction and took the website offline, Herring inquired about hosting the website "offshore" so that he could somehow move it beyond the reach of the Court:

> After complying with the attorneys' request, I notified Mr. Herring what I had done. He was displeased with my actions and asked me (as he had done previously in September 2018) about hosting the www.NITVCVSAexposed.com website "offshore" so that it would be beyond the reach of any court in the United States. I told Mr.

---

[31] See Vanderhoff Decl., at ¶ 8.

>  Herring that I would not assist him with doing that, but he indicated
>  that is the course he is pursuing at this time.[32]

While that conduct is unfortunate (and likely to lead Herring being held in civil and/or criminal contempt), it is not surprising. Mr. Vanderhoff has only confirmed what the forensic examination already revealed – Herring has been a bad actor since the initiation of this lawsuit and is simply not interested in complying with any rule, obligation, or Order.

## CONCLUSION

To say that Herring has been less than forthcoming in complying with his discovery obligations is perhaps the understatement of the year. Herring has put up every roadblock imaginable to avoid discovery of his egregious conduct, but his sheer incompetence ultimately (after months of delay tactics) betrayed him and shed light on his fraudulent/criminal activity. The striking of a litigant's pleadings and/or entry of default as a discovery sanction is an extreme remedy that should be reserved for extreme conduct. That conduct clearly exists here. No lesser sanction can adequately rectify Herring's deliberate destruction of evidence and other discovery misconduct. As Herring has not yet filed an Answer to the Complaint (despite being ordered to do so by March 4, 2019), the Court should enter a default against Herring (or strike any Answer filed in the interim) and direct Plaintiff to proceed with a motion for default final judgment against him.

## LOCAL RULE 7.1(a)(3) CERTIFICATE

Before filing this Motion, undersigned counsel attempted to confer with Herring regarding the relief requested. As set forth in the attached Exhibit "L" (June 5, 2019 e-mail exchange between Daniel DeSouza, Esq. and Arthur Herring, III), Herring refused to engage in a substantive

---

[32] Id. at ¶ 10.

discussion (responding with "Ha ha ha ha ha") and flaunted that the www.NITVCVSAexposed.com website is back up notwithstanding this Court's entry of a Permanent Injunction barring such. On June 6, 2019, undersigned counsel (Daniel DeSouza, Esq. and James D'Loughy, Esq.) spoke with Herring telephonically for approximately 18 minutes. During that time, Herring threatened multiple times that if Plaintiff did not pay him off, he would arrange for Plaintiff's principals and their wives to be prosecuted and jailed and he would continue sending the e-mails/communications to law enforcement agencies that he was previously enjoined from sending. When undersigned counsel finally had an opportunity to inquire about this Motion, Herring laughed off the concept that he did anything wrong and indicated (presumably) that he did not agree to the relief sought herein. To say that focused communication with Herring is 'difficult' is somewhat of an understatement.

|  |  |
|---|---|
| Respectfully submitted | Respectfully submitted, |
| ADVISORLAW PLLC<br>2925 PGA Boulevard<br>Suite 204<br>Palm Beach Gardens, FL 33410<br>Telephone: (561) 622-7788<br>Jdloughy@advisorlaw.com | DESOUZA LAW, P.A.<br>101 NE Third Avenue<br>Suite 1500<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 603-1340<br>DDesouza@desouzalaw.com |
| By:/s/ James D'Loughy<br>   James D'Loughy, Esq.<br>   Florida Bar No: 052700 | By: /s/ Daniel DeSouza, Esq._____<br>   Daniel DeSouza, Esq.<br>   Florida Bar No.: 19291 |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I

further certify that on June 10, 2019, I served the foregoing document via US Mail to Dektor Corporation and Arthur Herring, III, 400 E. Station Avenue, Coopersburg, PA 18036 and via e-mail to admin@dektorpse.com.

/s/ Daniel DeSouza
Daniel DeSouza, Esq.

4841-1795-7485, v. 1