IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-80994

NITV FEDERAL SERVICES, LLC,

    Plaintiff,

v.

DEKTOR CORPORATION and ARTHUR
HERRING, III,

    Defendants.

_____

**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY
ARTHUR HERRING, III SHOULD NOT BE HELD IN CONTEMPT**

Plaintiff NITV Federal Services, LLC ("Plaintiff") hereby files this motion for issuance of an Order to Show Cause why defendant Arthur Herring, III ("Herring") should not be held in contempt of the Court's December 16, 2019 Order of Final Default Judgment and Permanent Injunction Against Both Defendants (the "Final Judgment and Permanent Injunction") [D.E. 163] and, in support thereof, states as follows:

**I.   Background**

1. This lawsuit generally concerned Herring and co-defendant Dektor Corporation's ("Dektor") (collectively, the "Defendants") onslaught of defamation/disparagement aimed at Plaintiff, its products, and its founder (Charles Humble) – all in a concerted effort to drive customers to purchase Defendants' own truth verification software.

2. As the Court knows, prior to entry of the Final Judgment and Permanent Injunction, Herring had sent ***tens of thousands*** of e-mails/physical letters to law enforcement agencies throughout the country (thousands of which were sent during the pendency of this lawsuit) in

which Herring made a multitude of false/disparaging claims about Plaintiff, its products, and its founder.

3. On December 16, 2019, the Court entered the Final Judgment and Permanent Injunction. As the Court knows, that Order imposed a ***permanent*** injunction which enjoined Defendants from publishing/further spreading the aforementioned defamatory/disparaging remarks.

4. Because Defendants showed throughout this litigation a willful disregard/disdain for the court process, the Final Judgment and Permanent Injunction goes to painstaking lengths to provide multiple examples of the type of conduct that Defendants were enjoined from engaging in.

5. These restrictions included, but were not limited to:

> (1) any statement concerning the purported accuracy/reliability of CVSA; (2) any statement suggesting that Plaintiff and/or its products are a scam or ineffective; (3) any statement concerning the PSE's supposed proven superiority over the CVSA; (4) any statement comparing or equating Plaintiff, its product, or its employees to the German Nazi party or Joseph Goebbels specifically; (5) any statement that Plaintiff's products (including the CVSA) are no more accurate than a coin toss; (6) any statement misrepresenting the pricing of Plaintiff's products; (7) any statement that Mr. Humble received an unearned, fake, or 'store bought' diploma; (8) any statement suggesting that the CVSA is just an expensive prop; (9) any statement that law enforcement agencies continue to use Plaintiff's products in some conspiratorial effort to avoid overturned verdicts or lawsuits from defendants falsely convicted; (10) any statement that any law enforcement officer has been wrongly fired because he flunked/failed a CVSA test yet was being truthful; (11) any statement that the processes/procedures used by Plaintiff (such as numeric scoring, DSR [Delayed Stress Response], cold calling, kinesics, F.A.C.T. and DBR [Defense Barrier Removal]) have no real substance or credibility; (12) any statement that any of the enjoined parties has "heard from" current or former CVSA examiners that there are serious flaws with the CVSA; (13) any statement that some purported 2007 study found serious design flaws with the CVSA that will produce flawed

    patterns/incorrect results; (14) any statement suggesting that CVSA tests were affected/ruined by persons holding the microphone during the test; (15) any statement that Plaintiff's recertification courses are 'bullshit' type classes and the same information taught in Plaintiff's original training courses; (16) any statement suggesting that Plaintiff 'stole' or misappropriated Dektor's technology; and/or (17) any suggestion that Plaintiff was somehow banned from advertising in insurance magazines or stopped advertising as a result of a drop in sales to law enforcement.[1]

  6. On or about April 28, 2020 (around the time that Plaintiff was engaging in post-judgment discovery), Herring filed a voluntary Chapter 7 bankruptcy petition (Petition No. 20-12141) in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

  7. That bankruptcy filing triggered the automatic stay protections of 11 U.S.C. § 362 which operated to stay Plaintiff's post-judgment collection efforts – but ***did not*** operate as a stay of this Court's contempt powers to enforce its own Orders. See, e.g. In re Coulton, 594 F. App'x 563, 566 (11th Cir. Nov. 25, 2014) (holding that contempt order was excepted from automatic stay because judiciary, acting through movant as a surrogate, in effect "brought" contempt proceeding); see also In re Mont., 185 B.R. 650, 652 (Bankr. S.D. Fla. 1995) ("Debtor's real beef appears to be that the State Court has held him in contempt and incarcerated him for failure to obey its court orders. Debtor's determination of contempt and incarceration were not violations of the automatic stay, but acts of the State Court attempting to enforce its own orders. Contempt proceedings arising out of a debtor's disobedience of a state court order are not stayed by debtor's bankruptcy filing when the state court order disobeyed was made prior to filing of the bankruptcy petition.").

---

[1]  See D.E. 163, at pp. 18 – 19.

8. Notably, NITV instituted an adversary proceeding in the bankruptcy court seeking to exclude from Herring's bankruptcy discharge the final judgment in this lawsuit. On May 20, 2021, the bankruptcy court entered an Order Dismissing Adversary Proceeding (following the parties' stipulation of dismissal) in which the bankruptcy court unequivocally stated that the bankruptcy discharge "in no way affects or alters the parties' respective obligations under the Southern District of Florida's December 16, 2019 permanent injunction" and that "the permanent injunction shall remain":[2]

> The Court shall separately address, in defendant/debtor Arthur Herring, III's principal case, plaintiff/creditor NITV Federal Services, LLC's pending Motion for Relief from Stay [D.E. 55]. To be clear, the dismissal of this adversary proceeding in no way affects or alters the parties' respective obligations under the Southern District of Florida's December 16, 2019 permanent injunction. While the debt stated therein will be discharged as a result of this dismissal, the permanent injunction shall remain. *See, e.g. In re Stone Res., Inc.*, 458 B.R. 823, 825 (E.D. Pa. 2011); *see also Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496 (6th Cir. 2001).

9. In any event, the bankruptcy court on September 17, 2021 entered an Order closing the bankruptcy case.[3] Thus, even if the automatic stay somehow protected Herring from these contempt proceedings (it does not), such stay no longer applies – especially with respect to the conduct described herein which occurred *after* the bankruptcy case was closed.

---

[2] A true and correct copy of the bankruptcy court's May 20, 2021 Order Dismissing Adversary Proceeding is attached hereto as Exhibit "1."

[3] A true and correct copy of the bankruptcy court's September 17, 2021 Order Approving Trustee's Final Account, Discharging Trustee, and Closing Estate is attached hereto as Exhibit "2."

**II.      Herring is Hiding Behind a Pseudonym to Send the *Same* Correspondence that Resulted in the Permanent Injunction**

10.     On November 2, 2021, Plaintiff received an e-mail from Detective Tamra Alstatt of the Garfield County Sheriff's Office.[4] The e-mail attaches thereto a letter that was received (on November 2, 2021) by Detective Alstatt as well as the envelope such letter was sent in.[5]

11.     The letter purports to be sent by "Bob Ross, reporter" from "WorldNewsDaily.net."

12.     As a threshold matter, "worldnewsdaily.net" does not link to any active website. Nor does a Google/internet search mention any "Bob Ross" as a reporter affiliated with such 'organization.'

13.     While the letter does not bear Herring's name (likely because Herring is attempting to avoid the consequences of violating the Final Judgment and Permanent Injunction), the overwhelming evidence points squarely to Herring as being the person who sent it.

14.     First, the envelope is stamped "PHILADELPHIA PA" which is approximately a 1-hour drive from Herring's last-known address in Quakertown, PA.

15.     Second, this is not the first correspondence sent from Herring to Detective Alstatt. As referenced in prior motions filed in this lawsuit, on July 22, 2018, Herring sent an e-mail to Detective Alstatt (subject: "lie detector scam") in which he makes many of the same defamatory remarks/statements as in the letter received by Detective Alstatt on November 2, 2018.[6]

16.     Third, the November 2, 2021 uses the same font as a multitude of defamatory/disparaging filings made by Herring during his bankruptcy case, such as:

---

[4]     A true and correct copy of the November 2, 2021 e-mail is attached hereto as Exhibit "3."

[5]     True and correct copies of the letter and envelope are attached hereto as Exhibits "4" and "5," respectively.

[6]     A true and correct copy of Herring's July 22, 2018 e-mail is attached hereto as Exhibit "6."

    (a)    1/30/21 – Herring's Reply to NITV's Opposition to Debtor's Motion for Sanctions [D.E. 65][7]

    (b)    11/17/20 – Herring's Motion for Sanctions Against Chucky Humble, Lourdes Humble, Jimmy Kane, Olga Kane, Dean Weisgold, Danny DeSousa, Jimmy D'Loughy, Advisor Law, DeSousa Law, Weissgold Law and All NITV Named Entities [D.E. 54][8]

17. These filings, in addition to Herring's October 9, 2020 "Motion to Deny Summary Judgment to Plaintiff" filed in NITV's adversary proceeding,[9] likely constituted violations of the Permanent Injunction themselves. NITV, however, elected not to pursue contempt proceedings at that time in the naïve hope that Herring would cease his defamatory campaign once his bankruptcy ended. As set forth herein, that hope was misplaced.

18. Finally, and most importantly, is the fact that the content of the November 2, 2021 letter matches the content of Herring's prior musings/filings on the subject – whether in the form of his thousands of e-mails or his various filings in both this Court and the bankruptcy court.

19. Using just Herring's November 17, 2020 Motion for Sanctions as an example, the following is revealed:

| **November 2, 2021 Letter** | **November 17, 2020 Motion for Sanctions** |
|---|---|
| "Nitv's various names and Nitv's use of the Great Seal (Nitv's company symbol for 31 years) imply Nitv is part of the U.S. government. It is a felony every time Nitv uses the Great seal as their company symbol. Nitv has used the Great Seal as their company symbol over 11,000 days since 1988 when | "When humble first started nitv in 1988, he used the Great Seal of the US as his company symbol. That is illegal and a felony. Humble used company names to make people think his business was part of the federal government. Humble used names such as nitv federal services, nitv government services, |

---

[7]    A true and correct copy of Herring's January 30, 2021 Reply to NITV's Opposition to Debtor's Motion for Sanctions is attached hereto as Exhibit "7."

[8]    A true and correct copy of Herring's November 17, 2020 Motion for Sanctions Against Chucky Humble, Lourdes Humble, Jimmy Kane, Olga Kane, Dean Weisgold, Danny DeSousa, Jimmy D'Loughy, Advisor Law, DeSousa Law, Weissgold Law and All NITV Named Entities is attached hereto as Exhibit "8."

[9]    A true and correct copy of Herring's October 9, 2020 Motion to Deny Summary Judgment to Plaintiff is attached hereto as Exhibit "9."

| | |
|---|---|
| Nitv started."[10] | etc. Since 1988, humble has used the Great Seal as his company symbol about 11,500 times, once for each day humble has been In business."[11] |
| Humble calls himself "Dr" (PhD). But, he bought that title in 1987 from a one room store selling fake education diplomas. It was called Indiana Christian University. Humble uses the store bought 'Dr' title to convince people he is a genius."[12] | "About 1987, a person called 'Chucky' Humble, went to a one room store in Indiana that sold fake education "diplomas". The store was called Indiana Christian University (ICU)."[13]<br><br>"In 1987, humble bought a fake diploma of 'Dr' of Psychology from ICU for the sole purpose of using it for his new lie detection business. Humble wanted to make people think he was a genius, especially as a lie detector inventor."[14] |
| "Each Cvsa is $10,000, training is $1,400 per person and 'recertification fees' are $400, per Cvsa examiner, every two years for life."[15] | Each cvsa is $10,000, training is $1,400 per examiner and recertification fees are $400 per examiner, every two years for LIFE."[16] |
| "Nitv has a law firm, Advisor Law, who specializes in hiding assets in offshore banks."[17] | "One of the two law firms nitv uses to sue people is advisor law, owned by d'loughy. On his website, d'loughy brags he knows how to hide people's assets from lawsuit judgements."[18] |
| "Nitv also has a Cvsa member association called NACVSA. Nitv claims it is in Delaware. But, the 'address' is only a mailbox in a stationary store. The phone number listed for the association in Delaware actually rings in Nitv's office in Florida. It was reported by a former Nitv employee that Delaware is used to avoid paying taxes on member's dues in | "Nitv has had a so-called cvsa member association for about 20 years. The 'association' charges cvsa examiners money to be a member. It has a 800 type number and its address is in Delaware. But, the phone number rings in nitv's Florida office and the address in Delaware is a stationary store PO box. The association address is in Delaware so nitv does not have |

---

[10]   See November 2, 2021 letter, at p. 4.

[11]   See November 17, 2020 Motion for Sanctions, at p. 39 of 33 (¶ 37).

[12]   See November 2, 2021 letter, at p. 4.

[13]   See November 17, 2020 Motion for Sanctions, at p. 5 of 44 (¶ 5).

[14]   See November 17, 2020 Motion for Sanctions, at p. 7 of 44 (¶ 7).

[15]   See November 2, 2021 letter, at p. 1.

[16]   See November 17, 2020 Motion for Sanctions, at p. 7 of 44 (¶ 11).

[17]   See November 2, 2021 letter, at p. 1.

[18]   See November 17, 2020 Motion for Sanctions, at p. 11 of 44 (¶ 37).

| | |
|---|---|
| Florida."[19] | to pay taxes on the membership fees."[20] |
| Nitv hires only former high level law enforcement types (chiefs, captains, detectives, etc) as sales people, instructors and sales directors. Their former titles are used to convince other law enforcement to buy Cvsa."[21] | "As part of their scam, nitv only hires former, high level, law enforcement (police chiefs, captains, etc) as sales people, instructors and sales directors to convince others in law enforcement they must buy cvsa."[22] |
| "The fact is, independent studies have only shown Cvsa to be about a coin toss for accuracy, about 50%."[23] | "Various news media and independent studies have proven cvsa has no better accuracy than about 50%, a coin toss."[24] |

20. These are just a few of the multitude of examples of 'similarities' between Herring's prior writing and that proffered by "Bob Ross" in the subject November 2, 2021 letter. Dozens (if not hundreds) more examples can be revealed by reviewing Herring's other filings in both this case[25] and the bankruptcy court, but the point remains that – all facts considered – there is no question that Herring is back to his old game in sending highly defamatory/disparaging communications that are squarely within the purview of the Permanent Injunction.

**III.     Argument**

    *A.     Legal Standard*

        **1.     Civil Contempt**

District courts have the inherent power to enforce compliance with their orders through civil contempt. Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980). "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged

---

[19]  See November 2, 2021 letter, at p. 1.

[20]  See November 17, 2020 Motion for Sanctions, at p. 13 of 44 (¶ 50).

[21]  See November 2, 2021 letter, at p. 1.

[22]  See November 17, 2020 Motion for Sanctions, at p. 13 of 44 (¶ 43).

[23]  See November 2, 2021 letter, at p. 2.

[24]  See November 17, 2020 Motion for Sanctions, at p. 7 of 44 (¶ 9).

[25]  See, e.g. D.E. 141, 145, 146, 165, 171, 175.

contemnor has violated an outstanding court order." Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992) (per curiam). Clear and convincing evidence must demonstrate that: "1) the allegedly violated order was valid and lawful; 2) the order was clear and unambiguous; and 3) the alleged violator had the ability to comply with the order." Ga. Power Co. v. N.L.R.B., 484 F.3d 1288, 1291 (11th Cir. 2007). "Ambiguities should be resolved in favor of the party charged with contempt." United States v. Barnette, 902 F. Supp. 1522, 1532 (M.D. Fla. 1995).

Once a prima facie showing of a violation is made, the burden shifts to the alleged contemnor "to produce evidence explaining his noncompliance" at a show cause hearing. Citronelle—Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991). At such a hearing, the alleged contemnor is "allowed to show either that he did not violate the court order or that he was excused from complying." Mercer v. Mitchell, 908 F.2d 763, 768 (11th Cir. 1990). "Parties subject to a court's order demonstrate an inability to comply only by showing that they have made in good faith all reasonable efforts to comply." Watkins, 943 F.2d at 1301 (internal quotation marks omitted).

### 2. Criminal Contempt

A party can establish criminal contempt when it puts forth evidence the alleged contemnor "is aware of a clear and definite court order and willfully disobeys the order." United States v. Baldwin, 770 F.2d 1550, 1557 (11th Cir. 1985) (citation omitted). "An essential element of [criminal contempt] is an intent, either specific or general, to commit it. By definition, contempt is a willful disregard or disobedience of a public authority." Id. at 1558 (citations and internal quotation marks omitted). The party alleging contempt must prove "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an

order." Id. (citation omitted).  Reckless disregard will also suffice.  United States v. KS & W Offshore Eng'g, Inc., 932 F.2d 906, 909 (11th Cir. 1991) (per curiam) (citation omitted).

### B.   The Court Should Issue an Order to Show Cause Why Herring Should Not be Held in Civil or Criminal Contempt

Herring is well-aware of the fact that the Permanent Injunction enjoins him from making the statements found throughout the November 2, 2021 letter.  Herring is likewise well-aware of the fact that his bankruptcy case did not disturb the Permanent Injunction – indeed, Herring personally attended the hearing in Pennsylvania bankruptcy court in which the bankruptcy judge made that point crystal clear and he likewise received a copy of the bankruptcy court's order stating the same.  Knowing this, Herring created an alias ("Bob Ross") to begin sending the same type of correspondence to the same law enforcement agencies that previously resulted in imposition of the Permanent Injunction.

At this point, Plaintiff is only aware of the 1 letter received by Detective Alstatt.  However, given Herring's past proclivity for sending tens of thousands of letters/e-mails to law enforcement agencies throughout the country, there is little doubt that Herring is back to his original onslaught, albeit this time attempting feebly to cover his tracks through use of an alias.  Herring has thumbed his nose at the judicial process throughout this lawsuit – he committed perjury (lying about secret e-mail accounts he created to avoid producing those e-mails in discovery), he destroyed a hard drive containing thousands of highly-relevant documents (and asked his IT professional to lie about the hard drive), and he committed various other discovery violations the sum total of which led to the extreme remedy of entering a default judgment against him.  Following that default judgment, Herring boldly proclaimed (in filings in this lawsuit) that he would not comply with any injunction.

Herring has stayed true to his word.  There is no question that "Bob Ross" is Herring, and

10

there is no question that the November 2, 2021 letter is a direct and contemptuous violation of the Final Judgment and Permanent Injunction. The letter was sent from Philadelphia (1-hour from Herring's residence), in the same font used by Herring in multiple court filings, using the same statements Herring has made dozens of times, and the letter purports to be authored by a non-existent "reporter" named "Bob Ross." Herring can certainly testify that he is not "Bob Ross" and did not send the letter (further exposing himself to criminal perjury charges), but common sense and the overwhelming weight of evidence dictates otherwise.

There is nothing ambiguous about the Permanent Injunction. Indeed, given Herring's past behavior, the Permanent Injunction goes to painstaking lengths to inform Herring about the conduct he is enjoined from. The Court should not allow Herring to now ignore the Permanent Injunction and restart his campaign of defamation/disparagement. The Court should convene a show cause hearing (or initiate criminal contempt proceedings given that Herring has violated a prohibitory injunction rather than failed to take some affirmative action) to allow Herring to explain his conduct and why he should not be held in civil or criminal contempt. If Herring fails to do so, the Court should impose the appropriate sanction to demonstrate to Herring that compliance with the Court's Orders is not optional.

## IV.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the court enter an Order to Show Cause why Herring should not be held in civil contempt (or institute criminal contempt proceedings) for his violation of the Permanent Injunction.

## LOCAL RULE 7.1(a)(3) CERTIFICATE

Before filing this Motion, undersigned counsel attempted to confer with Herring with respect to the relief requested herein. Because Herring has not made his telephone number

available, undersigned counsel initially contacted Herring via e-mail on November 3, 2021.[26] Herring's response was "stuff it desousa" and to disclaim any knowledge of the subject matter of this Motion. After a further attempt to confer, Herring threatened to "turn the matter over to the county district attorney" for prosecution of undersigned counsel for harassment (Herring has already filed multiple Bar complaints against undersigned counsel and attempted to have undersigned counsel prosecuted for unspecified crimes in both Pennsylvania and Florida). Herring's refusal to confer is consistent with his pattern of behavior throughout this lawsuit.[27]

Dated: November 5, 2021.

| | |
|---|---|
| ADVISORLAW PLLC | DESOUZA LAW, P.A. |
| 2925 PGA Boulevard | 3111 N. University Drive |
| Suite 204 | Suite 301 |
| Palm Beach Gardens, FL 33410 | Coral Springs, FL 33065 |
| Telephone: (561) 622-7788 | Telephone: (954) 603-1340 |
| Jdloughy@advisorlaw.com | DDesouza@desouzalaw.com |
| By: /s/ James D'Loughy | By: /s/ Daniel DeSouza, Esq. |
| James D'Loughy, Esq. | Daniel DeSouza, Esq. |
| Florida Bar No: 052700 | Florida Bar No.: 19291 |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that on November 5, 2021, I served the foregoing document via US Mail to: (1) Arthur Herring, III, 1045 NW End Boulevard, Lot 150, Quakertown, PA 18951 and (2) Arthur

---

[26] A true and correct copy of the e-mail chain between undersigned counsel and Herring is attached hereto as Exhibit "10."

[27] See, e.g. D.E. 176.

Herring, III, P.O. Box 43, Earlington, PA 18918.[28] and via e-mail to <u>herthur20@protonmail.com</u>.[29]

> By: <u>/s/ Daniel DeSouza___</u>
> Daniel DeSouza, Esq.

---

[28] This is the address used by Herring on a Florida Bar complaint he filed against undersigned counsel in July 2021.

[29] This is the e-mail address used by Herring as late as May 2021 during his bankruptcy case.

13